IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BARRY A. HAZLE, JR.,              )
                                  )
              Plaintiff,          )    2:08-cv-02295-GEB-KJM
                                  )
         v.                       )    ORDER GRANTING PLAINTIFF'S
                                  )    MOTION FOR PARTIAL SUMMARY
MITCH CROFOOT, individually and as )   JUDGMENT, GRANTING DEFENDANT
Parole Officer of the CDCR; BRENDA )   WESTCARE'S MOTION FOR SUMMARY
WILDING, individually and as Unit )    JUDGMENT, and DENYING
Supervisor of the CDCR; MATTHEW   )    PLAINTIFF'S CROSS-MOTION FOR
CATE, individually and as Secretary)   PARTIAL SUMMARY JUDGMENT*
of the CDCR; SCOTT KERNAN,        )
individually and as Chief Deputy  )
Secretary of Adult Operations of  )
the CDCR; TIM HOFFMAN, individually)
and as Director of the Division of )
Adult Parole Operations in        )
California; DEPUTY COMMISSIONER    )
JALLINS, individually and as      )
deputy commissioner; and WESTCARE, )
                                  )
              Defendants.         )
_____)

Pending are three motions for summary judgment or summary adjudication concerning Plaintiff's claims that Defendants violated his rights under the Establishment Clause of the First Amendment. Specifically, Plaintiff argues these rights were violated when he was required to participate in a "12-step" drug rehabilitation program containing religious components as a condition of his parole.

Plaintiff filed a motion for partial summary judgment ("Partial Mot.") on December 23, 2009. Plaintiff seeks a ruling in this motion that Defendants Mitchell Crofoot ("Crofoot"), Brenda Wilding ("Wilding"), and Richard Jallins ("Jallins") are liable for

_____

        *    This matter is deemed suitable for decision without oral argument.  E.D. Cal. R. 230(g).

1

violating his rights under the Establishment Clause by not relieving Plaintiff from a condition of his parole requiring him to attend a 12-step program with religious components after Plaintiff objected to the religious components.  Defendant Westcare California, Inc. ("Westcare") also filed a motion for summary judgment ("Westcare Mot.") on December 23, 2009, in which it argues Plaintiff is unable to establish a causal connection between Westcare's activities and his Establishment Clause claim.  Westcare also argues in its motion that Plaintiff's request for a taxpayer's injunction enjoining Defendants from using state resources and funds to require parolees to participate in 12-step programs with religious components is moot. Lastly, Plaintiff filed a cross-motion for partial summary judgment ("Cross Mot.") on January 26, 2010, in which he seeks a ruling that Westcare liable for violating his Establishment Clause rights.  For the following reasons, Plaintiff's partial motion seeking to establish the liability of Crofoot, Wilding,  and Jallins is GRANTED; Westcare's motion is GRANTED; and, Plaintiff's cross-motion against Westcare is DENIED.

## I.  Background

Plaintiff "was incarcerated at California Rehabilitation Center, Norco, from February 27, 2006 to February 27, 2007, on charges pertaining to possession of illegal substances."  (Westcare's Statement of Undisputed Facts in Support of Motion for Summary Judgment ("Westcare SUF") ¶ 1.)  "[Plaintiff] was released . . . on February 26, 2007, [and placed] on parole with the single condition that he attend and complete a 90-day ['12-step'] residential drug treatment program."  (Id. ¶ 2; Statement of Undisputed Facts In Support of Plaintiff's Motion for Partial Summary Judgment ("Partial

Mot. SUF") ¶ 1; Statement of Undisputed Facts in Support of Plaintiff's Cross Motion for Partial Summary Judgment ("Cross Mot. SUF") ¶ 12.)  Defendant "Mitch Crofoot was [Plaintiff's] parole agent at the time Plaintiff [participated in the drug treatment program]." (Partial Mot. SUF ¶ 4.)

Westcare "contracts with the [California Department of Corrections and Rehabilitation ("CDCR")] as a regional Substance Abuse Services Coordination Agency ("SASCA") for Parole Region I in California." (Westcare SUF ¶ 11; Cross Mot. SUF ¶ 1.)  As a SASCA, "Westcare creates a network of treatment facilities for parolees with drug-related convictions, and coordinates with the State to place parolees in these programs." (Cross Mot. SUF ¶ 3.)  "Westcare's standard form contract with residential providers prohibits the providers from requiring the 'SASCA participants to attend religious events or participate in religious activities.  Any such participation is entirely optional for the SASCA participants and contractors may not impose a penalty for lack of participation.'" (Cross Mot. SUF ¶ 6.)  A residential treatment facility is required to abide by the above provision in order to contract with Westcare. (Cross Mot. SUF ¶ 7; Smith Dep. 24:23-26:6.)  "Empire Recovery Center ("Empire") is a non-profit corporation which contracts with Westcare to provide substance abuse treatment and re-entry services to parolees upon release from prison." (Westcare SUF ¶ 6.)  "Empire is an independent contractor under the terms of the contract with Westcare." (Westcare SUF ¶ 7.)

"Prior to his release on parole in February 2007, [Plaintiff] told correctional authorities and Westcare representatives that he was an Atheist, and requested placement in a treatment

facility that did not contain religious components to fulfill the
condition of his parole." (Cross Mot. SUF ¶ 13.) "A Westcare
representative advised him that he should ask to be assigned to
[Empire]." (Cross Mot. SUF ¶ 13.) Plaintiff was assigned to Empire
in Redding, California. (Partial SUF ¶ 2; Westcare SUF ¶ 4.) Empire
utilizes a 12-step recovery program, developed by Alcoholics Anonymous
and Narcotics Anonymous, which includes references to God and a higher
power. (Cross Mot. SUF ¶ 14; Partial Mot. SUF ¶ 3.)

       "While at Empire, [Plaintiff] notified Westcare
representatives and told them that he objected to the religious 12-
step program used by Empire, and asked to be transferred to a secular
alternative." (Cross Mot. SUF ¶ 15.) "[Plaintiff] also asked
[Crofoot] whether he could fulfill his parole requirement through a
secular recovery program." (Partial Mot. ¶ 7; Cross Mot. SUF ¶ 16.)
"[Plaintiff] told Crofoot that he objected to participating in the
Empire program because he was an atheist." (Partial Mot. SUF ¶ 6.)
"Crofoot told [Plaintiff] that he needed to continue at Empire while
Crofoot looked into the issue of whether secular programs were
available, and told [Plaintiff] not to leave the Empire class in the
meantime." (Cross Mot. SUF ¶ 17.) "Crofoot called Westcare to ask
whether a non 12-step program was available for [Plaintiff]." (Cross
Mot. SUF ¶ 18.) "Westcare informed Crofoot that there were no secular
treatment programs in the Northern California area." (Westcare SUF ¶
24.) "While waiting to hear back from Crofoot, [Plaintiff] contacted
Westcare and again explained that he was an atheist and asked whether
he could attend a secular program in lieu of Empire's religious 12-
step program." (Cross Mot. SUF ¶ 19.) "Westcare representative Dawn
Hall told [Plaintiff] that the only other available program was a

faith-based program called Cornerstone, and that if he 'didn't like Empire, he really wasn't going to like it at Cornerstone.'" (Cross Mot. SUF ¶ 20.) "After making inquiries, Crofoot told [Plaintiff] that there were no programs that were 'non 12-step.'" (Partial Mot. SUF ¶ 9.) "Crofoot told [Plaintiff] that he could file an Inmate/Parolee Appeal [known as a "602 Appeal"], but that in the meantime [Plaintiff] should continue to participate in the Empire Program or he would be returned to prison." (Partial Mot. SUF ¶ 10.) "[Plaintiff] presented Crofoot on April 3, 2007 with a 602 Appeal that set forth the basis for his objection to participation in the Empire program." (Partial Mot. SUF ¶ 11)  Plaintiff's 602 Appeal states:

> As an Atheist I object to forced participation in any spiritual/religious activities. I am currently required to attend 90 days on in-patient treatment at the Empire Recovery Center in Shasta County. I have been told by my parole officer that I must complete the 90 days of spiritual treatment because there are no available secular recovery alternatives. [¶] Since the CDC cannot provide me with a secular alternative to 12-step based treatment I would like the in-patient treatment stipulation removed from my parole conditions so that I may return home ASAP.

(Heller Decl. Partial Mot. Ex. B; Heller Decl. Cross Mot. Ex. L.) Plaintiff also attached to his 602 Appeal a document further explaining his beliefs as an Atheist and a summary of judicial opinions in support of his request.  (Id.)

"According to Crofoot, representatives of Empire told Crofoot on April 6, 2007, that [Plaintiff] 'has been disruptive, though in a congenial way, to the staff as well as other students.'" (Partial Mot. SUF ¶ 12; Cross Mot. SUF ¶ 30.) "Crofoot's understanding from the Empire representatives was that [Plaintiff] 'was not being loud; he wasn't throwing things around; he wasn't

stomping around; he wasn't being boisterous and that sort of thing.'" (Partial Mot. SUF ¶ 13; Cross Mot. SUF ¶ 31.)  "He was 'sort of passive aggressive.'"  (Partial Mot. SUF ¶ 13; Cross Mot. SUF ¶ 31.) "Crofoot spoke with his Unit Supervisor, Defendant Brenda Wilding, and concluded that the right thing to do was to refer Plaintiff to [the Board of Parole Hearings (the "BPH")] on a parole violation for failing to participate in the BPH-ordered program." (Partial Mot. SUF ¶ 15.)  "Wilding understood that [Plaintiff] objected to participating in the Empire [] program because he was an atheist."  (Partial Mot. SUF ¶ 20.)  "Wilding understood that Crofoot told [Plaintiff] that [Plaintiff] had to either participate in the [program] or be returned to prison."  (Partial Mot. SUF ¶ 21.)  "Crofoot and Wilding decided together that [Plaintiff] needed to be returned to prison so that he could argue his case before the BPH."  (Partial Mot. SUF ¶ 16.) "Crofoot arrested [Plaintiff] on April 6, 2007 and booked him into the Shasta County Jail."  (Partial Mot. SUF ¶ 17.)  "After arresting [Plaintiff], Crofoot called the [California Rehabilitation Center (the "CRC")], explained the circumstances pertaining to [Plaintiff], explained that he was requesting that [Plaintiff] be returned to custody, and obtained an oral order of return authorized by Deputy Commissioner Richard Jallins."  (Partial Mot. SUF ¶ 18.)  "After the oral order of return was authorized from Deputy Commissioner Jallins, [Plaintiff] was sent back to prison."  (Partial Mot. SUF ¶ 19.)  The "oral order questionnaire/authorization" signed by Crofoot and approved by Jallins, states in the Comments section: "Refusing to participate in residential program.  Causing problems with staff that is effecting [sic] the other residents."  (Heller Decl. Partial Mot. Ex. C; Cross Mot. SUF ¶ 34.)

"[Plaintiff] was incarcerated for more than 100 days, the bulk of which he spent in state prison in Norco, California." (Cross Mot. SUF ¶ 35.)  "On June 27, 2007, while Plaintiff was still in prison, he received a response from CDCR to his 602 appeal, denying the appeal." (Cross Mot. SUF ¶ 36.)  The response to Plaintiff's 602 Appeal states:

> It would behoove you to take advantage of the tools that are offered to you to help you with your addiction, behavior, and adjustment to society. Per your Agent of Record, Mr. Crofoot, he has made attempts to locate treatment facilities to accommodate your preference, per Mr. Crofoot, Empire Recovery was the best suited for you. Your negative behavior toward staff caused you to be discharged from that program leaving your Agent of Record no other choice but to return you to CRC for further treatment. Therefore, your request is denied.

(Heller Decl. Partial Mot. Ex. I.)  The response is signed by William Crisologo, Associate Chief Deputy Commissioner, Board of Parole Hearings.  (Id.)

Plaintiff filed his Complaint in this case on September 29, 2008.  After Plaintiff filed his Complaint, on November 18, 2008, the CDCR issued Directive No. 08-06, which states:

> Case law filed on September 7, 2007 in the *United States Court of Appeals For The Ninth Circuit* established that placement of a parolee into a religious based substance abuse program at the objection of the parolee was unconstitutional. As such, the Division of Adult Parole Operations (DAPO) cannot compel a parolee to participate in Alcoholics Anonymous (AA), Narcotics Anonymous (NA) or any other religious-based substance abuse treatment program as a condition of parole. [¶] Effective immediately, Parole Agents assigned to DAPO, shall not require that a parolee attend AA, NA, or any other religious based program if the parolee refuses to participate in such a program for religious reasons.  Under these circumstances, the parolee shall be referred to an alternative nonreligious program.

7

(Cross Mot. SUF ¶ 37; Heller Decl. Cross Mot. Ex. O.)  "Westcare did not receive a copy of this directive until it was produced in discovery in this action."  (Cross Mot. SUF ¶ 38.)  "Westcare does not know what the term 'alternative nonreligious program' as used in the Directive means."  (Cross Mot. SUF ¶ 39.)  "The Directive has not altered the way in which Westcare conducts business."  (Cross Mot. SUF ¶ 40.)  "To date, Westcare continues to contract solely with residential providers that use the 12-step program 'in some form or fashion.'"  (Cross Mot. SUF ¶ 41.)

## II.  Legal Standard

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  If this burden is satisfied, "the non-moving party must set forth . . . specific facts showing that there is a genuine issue for trial."  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quotations and citation omitted) (emphasis omitted).  "All reasonable inferences must be drawn in favor of the non-moving party."  Bryan v. McPherson, 590 F.3d 767, 772 (9th Cir. 2009).  "Here, cross-motions for summary judgment are at issue. [The Court] evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences."  A.C.L.U. of Nevada v. City of Las Vegas, 466 F.3d 784, 790-91 (9th Cir. 2006).

//
//
//
//

1  //

2                        **III.  Analysis**

3  **A.   Hazle's motion for summary judgment on whether Defendants**
4  **       Crofoot, Wilding, and Jallins are liable for violating Hazle's**
       **Establishment Clause rights**

5              Plaintiff seeks a partial summary judgment finding that

6  Defendants Crofoot, Wilding, and Jallins (the "Parole Defendants") are

7  liable for violating his Establishment Clause rights by requiring him

8  to participate in a 12-step drug rehabilitation program that contained

9  religious components.  Specifically, Plaintiff argues the Parole

10 Defendants violated his First Amendment right under the Establishment

11 Clause as follows: (1) "requiring him, upon threat of arrest or

12 incarceration, to continue participating in a '12-step' program that

13 contained religious components"; (2) "rejecting his requests to

14 fulfill the treatment condition of his parole through a secular and

15 non-religious program"; and (3) "arresting and incarcerating him based

16 on his resistance."  (Partial Mot. 7:15-20.)  The Parole Defendants

17 respond, arguing it was Plaintiff's "disruptive behavior" and "not

18 [Plaintiff's] self-professed status as an Atheist [that] caused his

19 dismissal from his substance abuse program, . . . arrest[,] and

20 subsequent reincarceration . . . ."  (Parole Defs.' Opp'n to Partial

21 Mot. 4:1-10.)

22             "For the government to coerce someone to participate in

23 religious activities strikes at the core of the Establishment Clause

24 of the First Amendment, whatever else the Clause may bar."  <u>Inouye v.</u>

25 <u>Kemna</u>, 504 F.3d 705, 712 (9th Cir. 2007).  The Ninth Circuit

26 articulated the following test in <u>Inouye v. Kemna</u> "with regard to

27 determining whether [Plaintiff] was [subject to] governmental coercion

28 of religious activity . . . : 'first, has the state acted; second,

does the action amount to coercion; and third, is the object of the coercion religious rather than secular?'" Id. at 713. "First, [Crofoot] acted in his official state capacity as a parole officer to order [Plaintiff into a 12-step program that contained religious components]. That the state did not run the program itself is 'of no moment.'" Id. (quoting Kerr v. Farrey, 95 F.3d 472, 479 (7th Cir. 1996)). It is undisputed that Crofoot, Wilding, and Jallins were acting in their official state capacities when they required Plaintiff to participate in the 12-step drug treatment program as a condition of his parole, and subsequently removed and incarcerated him for not participating in the program.

        Further, the Parole Defendants' "action was clearly coercive: [Plaintiff] could be imprisoned if he did not attend and he was, in fact, ultimately returned to prison *in part* because of his refusal to participate in the program." Inouye, 504 F.3d at 713 (emphasis added). The Parole Defendants argue Plaintiff was returned to prison because he was "disruptive" in the program. This argument rings hollow in light of the undisputed facts showing Plaintiff was only "disruptive" in the program "'in a congenial way'" and "was 'sort of passive aggressive.'" (Partial Mot. SUF ¶¶ 12, 13.) It is also undisputed that Plaintiff communicated his objection to participation in the Empire program and that Crofoot told Plaintiff he "should continue to participate in the Empire Program or he would be returned to prison." (Id. ¶ 10.) It is further undisputed that Crofoot and Wilding concluded that "the right thing to do" was to refer Plaintiff to the Board of Parole Hearings "on a parole violation for failing to participate in the BPH-ordered program." (Id. ¶ 15.) It is also undisputed that Deputy Commissioner Jallins authorized Plaintiff to be

returned to prison because of Plaintiff's failure to participate in the program. (Id. ¶¶ 18-19, 24.)

"The final element requires somewhat more discussion." Kerr, 95 F.3d at 479. It is undisputed that "Empire used a 12-step program that included references to God and a 'higher power.'" (Partial Mot. SUF ¶ 3.) Further, Plaintiff's following averments in his declaration have not been controverted:

> Shortly after arriving at Empire, I discovered that Empire used a "12-step" recovery program based [on] the principles of Alcoholics Anonymous ("AA") and Narcotics Anonymous ("NA"), which contains religious components. Among other features, the "12-step" method used by Empire made references to God, involved acknowledgment of a "higher power," and included prayer. [¶] I am an atheist, and was one in 2007. The substantial religious components to the "12-step" program administered by Empire conflicted with my beliefs. Prior to my release on parole, I had notified correctional authorities of my Atheism, and requested placement in a treatment facility that did not contain religious components.

(Hazle Decl. ¶¶ 2, 3.) The Parole Defendants do not dispute that the Empire's 12-step program contained religious components. "As such, on this summary judgment record and given the lack of dispute between the parties in question, . . . the third prong of [Plaintiff's] Establishment Clause test has been met as well." Inouye, 504 F.3d at 713-14. Therefore, "the program runs afoul of the prohibition against the state's favoring religion in general over non-religion," because of the program's use of a religious concept of a Higher Power through references to God and prayer. Kerr, 95 F.3d at 480. Accordingly, Plaintiff's partial motion for summary judgment against the Parole Defendants is granted.

///

///

**B.  Plaintiff and Westcare's cross motions for summary judgment on Plaintiff's Establishment Clause claim**

Westcare and Plaintiff each seek summary judgment on Plaintiff's Establishment Clause claim.  Westcare argues Plaintiff "cannot establish a causual connection between Westcare's alleged acts and the violation of [Plaintiff's] rights."  (Westcare Mot. 6:3-4.)  Westcare further argues "Plaintiff has no evidence to support coercion on the part of Westcare."  (Westcare Mot. 9:10-11.)  Plaintiff argues Westcare "set in motion" the series of events leading up to the violation of his rights by "contract[ing] exclusively with 12-step facilities."  (Plt.'s Opp'n to Westcare Mot. 19:5-23.)  Plaintiff also argues Westcare is liable for "ignor[ing]" Plaintiff's "objections to the religious components of the program" once it became aware of them.  (Plt.'s Opp'n to Westcare Mot. 22:20-23:2.)

It is undisputed that Westcare contracts with the State of California to "create a network of treatment facilities for parolees with drug-related convictions, and coordinates with the State to place parolees in these programs."  (Cross Mot. SUF ¶ 3.)  It is also undisputed that Westcare does not have the authority to require a parolee to attend or remain within a specific residential treatment facility once there.  (Westcare SUF ¶ 15.)  It is further undisputed that parolees can be transferred to treatment facilities in other counties to fulfill their parole conditions upon the approval of the parolee's parole agent.  (Cross Mot. SUF ¶ 22.)  Since Plaintiff has not controverted Westcare facts with specific facts showing that Westcare had authority to require Plaintiff to attend or remain within a specific residential treatment facility, Westcare's motion is granted, and Plaintiff's motion is denied.

**C.    Westcare's Motion for Summary Judgment on Plaintiff's Injunction**

Westcare also seeks summary judgment of Plaintiff's request for an injunction, arguing that CDCR Directive No. 08-06, issued November 18, 2008, moots Plaintiff's request.  (Westcare Mot. 11:4-5.) The Directive states:

> Case law filed on September 7, 2007 in the *United States Court of Appeals For The Ninth Circuit* established that placement of a parolee into a religious based substance abuse program at the objection of the parolee was unconstitutional.  As such, the Division of Adult Parole Operations (DAPO) cannot compel a parolee to participate in Alcoholics Anonymous (AA), Narcotics Anonymous (NA) or any other religious-based substance abuse treatment program as a condition of parole. [¶] Effective immediately, Parole Agents assigned to DAPO, shall not require that a parolee attend AA, NA, or any other religious based program if the parolee refuses to participate in such a program for religious reasons.  Under these circumstances, the parolee shall be referred to an alternative nonreligious program.

(Heller Decl. Cross Mot. Ex. O.)  Plaintiff responds, arguing Westcare has not met its burden of showing that his claim for an injunction is moot.  (Opp'n to Westcare Mot. 23:22-23.)

"A case m[ay] become moot if subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior c[annot] reasonably be expected to recur."  United States v. Concentrated Phosphate Ass'n, 393 U.S. 199, 203 (1968).  Here, the uncontroverted Directive adopts a new policy that complies with the Ninth Circuit's holding in Inouye.  Such a conclusive change in policy, absent any indication that it was promulgated only in response to ongoing litigation, is sufficient to render the request for an injunction moot.  See White v. Lee, 227 F.3d 1214, 1243-44 (9th Cir. 2000) (finding that a "memorandum represent[ing] a permanent change" in policy, that was "unequivocal in tone," and "fully supportive of First

13

1  Amendment rights," mooted plaintiff's claims for prospective relief).

2  Therefore, this portion of Westcare's motion is granted.

3                           **IV.  Conclusion**

4          For the stated reasons, Plaintiff's partial motion for

5  summary judgment on Defendants Crofoot, Wilding, and Jallins'

6  liability is granted, Westcare's motion for summary judgment is

7  granted, and Plaintiff's cross-motion for partial summary judgment on

8  Westcare's liability is denied.  Further, Westcare's prevails on its

9  argument that Plaintiff's request for an injunction is moot.

10 Dated:  April 6, 2010

11

12                                 GARLAND E. BURRELL, JR.

13                                 United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28