IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BARRY A. HAZLE, JR., | ) | |
| Plaintiff, | ) | 2:08-cv-2295-GEB-EFB |
| | ) | |
| v. | ) | ORDER DENYING MOTION FOR NEW |
| | ) | TRIAL |
| MITCH CROFOOT, et al., | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Barry A. Hazle moves for a new trial under Federal
Rule of Civil Procedure ("Rule") 59(a) arguing: the jury's verdict was
contrary to the clear weight of the evidence; the jury failed to award
damages which was contrary to law and evinces the jury did not follow
the Court's instructions; and, newly discovered evidence shows the
Defendants presented false information to the jury.
Mitchell Crofoot ("Crofoot"), Brenda Wilding ("Wilding"), and Richard
Jallins ("Jallins") (collectively, "Defendants") oppose Hazle's motion.
For the reasons stated below, the motion is DENIED.

///

///

## I. LEGAL STANDARD

Rule 59(a) states, "A new trial may be granted . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed.R.Civ.P. 59(a)(1). The Ninth Circuit

> has noted, Rule 59 does not specify the grounds on which a motion for a new trial may be granted. Rather, the court is bound by those grounds that have been historically recognized. Historically recognized grounds include, but are not limited to, claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving. [The Ninth Circuit has] held that the trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice.

Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007) (citations and internal quotation marks omitted).

## II. FACTUAL BACKGROUND

Prior to trial, an order issued granting Hazle's motion for partial summary judgment against Defendants, in which each Defendant was found liable for violating Hazle's Establishment Clause rights by requiring him to participate in a 12-step drug rehabilitation program that contained religious components. (Order, April 7, 2010, ECF No. 87.) The final pretrial order prescribes: "The damage issues will be tried to a jury[.]" (Final Pretrial Order, May 5, 2010, ECF No. 93 1:22-23.)

A jury trial commenced on the damages issues on June 22, 2010. (Reporters Transcript ("RT") 4:1-4.) Following preliminary jury instructions, the judge told the jury about the pretrial ruling on liability as follows: "Ladies and gentlemen of the jury, I decided in a pretrial ruling that each defendant violated plaintiff's First Amendment Establishment Clause right by requiring that plaintiff attend a 12-step

drug rehabilitation program after plaintiff objected to the religious components of the program, and by arresting and incarcerating plaintiff because of that failure to participate in the program." Id. 73:14-19.

## A. Undisputed Facts

The following undisputed facts were read to the jury:

> As a condition of parole following his incarceration on drug possession charges, Barry Hazle was required to participate in a 12-step religious drug treatment program.
> The residential drug treatment program to which Hazle was assigned to fulfill his parole condition was called Empire Recovery Center.
> Empire used a 12-step program that included references to God and a higher power.
> Mitch Crofoot was Barry Hazle's parole agent at the time that Hazle was at Empire.
> One of Mr. Crofoot's responsibilities was to make sure that Hazle complied with the conditions of his parole.
> Hazle told Crofoot that he objected to participating in the Empire program because he was an atheist.
> Hazle asked Crofoot whether he could fulfill his parole requirements through a secular program.
> Crofoot told Hazle that he needed to continue at Empire while Crofoot researched the situation, and told Hazle not to leave class again.
> After making inquiries, Crofoot told Hazle there were no programs that were non-12-step.
> Crofoot told Hazle that he could file an inmate/parolee appeal, a 602 appeal, but that in the meantime he should continue to participate in the Empire program or he would be returned to prison.
> Hazle presented Crofoot on April 3, 2007 with a 602 appeal that set forth the basis for his objection to participation in the Empire program.
> According to Crofoot, representatives of the Empire told Crofoot on April 6, 2007, that Hazle has been disruptive, though in a congenial way, to the staff as well as other students.
> As to Hazle's disruptive behavior, Crofoot's understanding from the Empire representatives was that Hazle was not being loud; he wasn't throwing things around; he wasn't stomping around; he wasn't being boisterous and that sort of thing. He was sort of passive aggressive.
> Crofoot spoke with his unit supervisor Brenda Wilding and concluded that the right thing to do was to refer Hazle to the BPH, the Board of Prison Hearings, on a parole violation for failing to participate in the board-ordered program.

3

1   Crofoot and Wilding decided together that Hazle
    needed to be returned to prison so he could argue his
2   case before the BPH.
         Crofoot arrested Hazle on April 6, 2007, and booked
3   him into Shasta County Jail.
         After arresting Hazle, Crofoot called the CRC,
4   explained the circumstances pertaining to Hazle,
    explained that he was requesting that Hazle be returned
5   to custody, and obtained an oral order of return, and an
    oral order of return was authorized by Deputy
6   Commissioner Richard Jallins.
         After the oral order of return was authorized by
7   Deputy Commissioner Jallins, Hazle was sent back to
    prison.
8        Wilding understood that Hazle objected to
    participating in the Empire Recovery Center program
9   because he was an atheist.
         Wilding understood that Crofoot told Hazle that
10  Hazle either had to participate in the Empire Recovery
    Center program or be returned to prison.
11       Richard Jallins made the oral order of return with
    respect to Barry Hazle in April 2007.
12
    Id. 73:25-76:12.
13
         The following undisputed facts were also read to the jury:
14
         Number 1, . . . concerning the conditions that
15  existed from May 2006 to July 2007 at the California
    State Prison located in Norco, California, known as the
16  California Rehabilitation Center, may also be referred to
    as CRC.
17       Number 2, from May 2006 to February 2007, plaintiff
    Barry Hazle was incarcerated at CRC as a civil addict
18  after entering a no contest plea for a drug possession
    related offense. His incarceration during this period of
19  time, which was later ruled to be improper by a
    California appeals court, was not caused by any of the
20  defendants in this action.
         Following his arrest by defendant Crofoot in April
21  2007, plaintiff was re-incarcerated in CRC until July
    2007.
22       Number 3, between May 2006 and July 2007, CRC's
    inmate population was comprised of civil addicts like Mr.
23  Hazle, as well as inmates convicted of other felonious
    offenses.
24       Between April 2007 and July 2007 there were roughly
    3200 inmates housed at CRC, of which civil addicts
25  accounted for approximately 18 percent.
         Number 4, during this period, CRC was overcrowded.
26  The number of inmates housed in the facility was
    approximately twice the prison's design capacity.
27       According to a study presented by the California
    Department of Corrections and Rehabilitation to the
28  California State Senate in 2006, overcrowded prison
    conditions can have negative psychological and behavioral

4

1                 effects on inmates due to an increased likelihood of
2                 tension and violence between inmates. The study also
                found that prison overcrowding makes it more difficult
3                 for prison guards to control or limit inmate violence and
                provide rehabilitative or treatment programs.
4                     In March 2007, Governor Schwarzenegger toured CRC
                and expressed his opinion that overcrowding resulted in
5                 increased danger to prison staff and inmates.
                    [I]n these proceedings, the parties have not agreed
6                 to or stipulated to either the existence of or the extent
                of any alleged emotional distress related injuries
7                 suffered by Mr. Hazle during his incarceration at CRC, or
                at any other prison or substance abuse treatment
8                 facility.
                    The existence or extent of such emotional distress
9                 related injuries and damages is a question of fact to be
                determined by the jury based upon all of the admissible
10                evidence presented during the trial, as well as any
               instructions that the judge may give to you, the jury.

11 Id. 77:16-79:10.

12                           **III. DISCUSSION**

13                   **A. Clear Weight of the Evidence**

14         Hazle protests the jury's failure to award him damages, and

15 argues that the jury's award "of zero damages is simply irreconcilable

16 with [the pretrial] adjudicated liability, undisputed facts, and

17 principles of law." (Mot. 12:13-14.) Hazle contends "[b]ecause that

18 verdict is contrary to the clear weight of the evidence, a new trial

19 must be ordered." Id. 12:14-15.

20         The trial record evinces that the Board of Prison Hearings

21 ordered Hazle to be placed in the inpatient Empire program as a civil

22 addict, and that eventually Empire ceased allowing Hazle to participate

23 in that program because Hazle became disruptive. Each defendant

24 testified concerning a lack of authority to do anything other than re-

25 incarcerate Hazle in prison after Hazle was no longer allowed to

26 participate in the Empire in-patient program. (RT 128:11-18, 135:6-8;

27 141:1-7, 144:12-15, 145:13-19, 154:9-14.)

28 ///

1    Hazle argues that the jury apparently determined that "some
2    other party or parties . . . bore primary responsibility for the
3    violation of Hazle's rights", and that this determination does not
4    salvage the verdict, since each defendant "bear[s] full responsibility
5    for the consequences of" Hazle's incarceration "[u]nder principles of
6    joint and several liability[.]" (Mot. 9:22-23, 10:1-2.) However, the
7    jury's verdict on the damages and causation questions is clearly
8    supported by the trial record. In fact, the judge alerted the parties
9    about the authority and causation trial issues, out of the presence of
10   the jury, in pertinent part as follows:

11           THE COURT: The trial record is different than the
             record before me at the time I ruled on summary judgment.
12           There is an issue of authority that has been developed
             during your case. That issue was not an issue that was in
13           the summary judgment record, at least I don't recall
             seeing it.
14           Plaintiff said something during his testimony
             concerning the development of conditions for release
15           which basically states that "I don't think either of the
             defendants developed those conditions for release." And
16           two of the defendants have stated that they had no
             authority to change the conditions of release.
17           Am I mistaken in my statement that this authority
             issue was not an issue that was in the summary judgment
18           record?
             MR. HELLER [attorney for Plaintiff]: Your Honor, my
19           best understanding, and I remember the summary judgment
             papers fairly well, was that in the opposition raised by
20           the defendants to our motion for partial summary
             judgment, they did not assert as a defense or a basis for
21           not ruling in summary judgment anything having to do with
             authority. And that's not been an issue that was raised
22           in those papers, nor is it one that, given the ruling, we
             were intending or have addressed in this trial. It's come
23           up -- you're right, I've heard that in their testimony,
             but our focus in this trial has been not to prove or
24           disprove any of that.
             THE COURT: I'm not sure you're completely right
25           about . . . the focus in the trial was not to prove any
             of that, because when Crofoot was giving testimony, you
26           asked him about, I believe it was, the 602 appeal and the
             form that was used.
27           MR. HELLER: Yes, I remember that.
             THE COURT: And whether there was a place on the form
28           where he could have stated an opinion concerning whether

6

1    plaintiff should be allowed to attend a secular drug
     rehabilitation program.
2           And I thought that his testimony was that place on
     the form that you had referenced at some point during
3    your examination was not designed for that kind of input.
     And I thought that you followed up with a question that
4    basically tried to elicit from him testimony [showing] he
     could have used that space for . . . a purpose that would
5    have benefitted your client . . . .
            MR. HELLER: Yes. You're correct.
6
     (RT 335:9-337:2.)
7
            THE COURT: So, plaintiff's position is that each
8    defendant should be held liable, whether or not he or she
     had the authority to change the unconstitutional
9    condition to which plaintiff was subjected?
            MR. HELLER: No. Our position -- no. If I may correct
10   Your Honor, my position is that liability has already
     been established in this trial by your order, and that we
11   were not in a position to -- or did not attempt to refute
     that issue, that the authority question was never raised
12   in the summary judgment motion, so therefore we did not
     address it at that time.
13          And although there are issues that could be raised
     with respect to authority, we are not in a position to do
14   that because we didn't prepare, or bring in evidence in
     the course of the trial, to prove that issue. That would
15   be an issue that would be, obviously, our burden. And
     it's a burden that would be unfairly imposed upon us.
16          THE COURT: It's a burden that's what?
            MR. HELLER: It would be a burden that would not be
17   fairly imposed on us at this stage because we didn't --
     we didn't anticipate it during the course of the trial.
18   So that's my -- I respectfully explain that is our
     position, Your Honor.
19          THE COURT: But you must have anticipated it, because
     if you are seeking punitive damages, and you are, against
20   each defendant, aren't elements of punitive damages
     focused on what a defendant should have done, could have
21   done and failed to do, and if a defendant lacked the
     authority to do what plaintiff opines the defendant
22   should have done, then that appears to have a clear
     bearing on punitive damages.
23          MR. HELLER: You are right in the sense that we --
     that punitive damages turns on what options were
24   available, what they did, what they didn't do. But we did
     not put on a case because we did not anticipate that
25   authority would be a liability issue here that we would
     have to prove.
26          There is case authority, regretfully I can't cite it
     right now, but that punitive damages -- the fact that you
27   violated somebody's rights, as has been found in the
     order that was the basis of the initial ruling, is itself
28   a basis, if that was done recklessly, or in a callously
     or indifferent way, for the punitive damages.

1    So, our approach had to do with relying on that
2    ruling, on that prior ruling, and bringing out, as you
     heard during the testimony, some of the things that the
3    -- that the defendants did, didn't do, or could have
     done. So, it was not -- it is not -- it's not the same as
4    in the sense of a causation element or a -- for liability
     purposes, Your Honor. And we didn't plan or put on that
5    type of a case.

Id. 365:12-367:9.

6        However, Hazle proposed a compensatory damages jury

7    instruction that included a causation element on which the court relied

8    when finalizing the compensatory damages instructions. "[D]amages

9    awarded in a § 1983 action must always be designed to compensate

10   injuries caused by the constitutional deprivation." Guy v. City of San

11   Diego, 608 F.3d 582, 587 (9th Cir. 2010). Although Hazle states in his

12   reply that his "motion does not argue that there were errors in the

13   instructions and verdict form" (Reply in Supp. of Mot. for New Trial

14   ("Reply") 2:4-5.), the causation and jointly and severally liable jury

15   instructions are considered when determining what "[t]he jury likely

16   concluded" and whether "substantial evidence supported the jury's

17   verdict[.]" Guy, 608 F.3d at 588. Specifically, Hazle's proposed jury

18   instruction number two stated: "Damages mean the amount of money that

19   will reasonably and fairly compensate the plaintiff for any injury you

20   find was caused by defendants." (ECF No. 118 9:10-11 (emphasis added).)

21   Ultimately, the Court defined compensatory damages in the jury

22   instruction as follows: "Compensatory damages means the amount of money

23   that will reasonably and fairly compensate plaintiff for any injury you

24   find was caused by a defendant." (RT 421:7-9 (emphasis added).)

25       The jury instructions and verdict form also allowed the jury

26   to determine whether Defendants were jointly and severally liable based

27   on whether Hazle had "an indivisible injury that cannot be apportioned

28

8

to each defendant." (RT 422:2-3.) The jury was instructed on joint and several liability as follows:

> Whether defendants are jointly and severally liable depends on whether you find that plaintiff has an indivisible injury that cannot be apportioned to each defendant. Where several independent actors concurrently or consecutively produced a single indivisible injury, each actor will be held jointly and severally liable for the entire injury. Where plaintiff's injuries are divisible and attributable to the action of a specific actor or actors, <u>you shall specify damages caused by each actor</u>.

<u>Id.</u> 422:1-9 (emphasis added). The Court also instructed the jury to award nominal damages for emotional distress: "The law which applies to emotional distress damages authorizes an award of nominal damages. If you find that plaintiff has failed to prove emotional distress damages, you must award nominal damages." <u>Id.</u> 421:14-17.

The verdict form allowed the jury to determine joint and several liability for "Plaintiff's emotional distress damages" and, if the jury determined Defendants were not jointly and severally liable asked: "What is the amount of emotional distress damages <u>caused by</u> [each Defendant], if any?" (ECF No. 158 2:4-15 (emphasis added).) The verdict form repeated these questions for Hazle's "loss of time and freedom of movement damages" and, required the jury to answer the following question if the jury determined the Defendants were not jointly and severally liable: "What is the amount of loss of time and freedom of movement damages <u>caused by</u> [each Defendant], if any?" <u>Id.</u> 3:11-22.

The damages causation issue appeared to be a focus of the jury during deliberations since the jury sent a note to the Court seeking:

> Verification of the court's determination of a guilty verdict having been rendered against the Defendants for violation of the Plaintiff's constitutional rights. We are confused as to whether the Defendants are the <u>only</u> parties to have been found in violation of the Plaintiff's rights.

(ECF 156.) The parties ultimately agreed that the Court would respond to the jury as follows: "I found each defendant liable but did not decide whether any defendant caused damages to plaintiff." (RT 458:8-459:4.) While discussing the jury's question with the parties, the Court explained that the word "cause" was not defined in the jury instruction and there is both a lay and legal meaning for that word. Id. 449:22-459:4, 469:20-471:17. The Court offered to instruct the jury on the meaning of the word; however, Hazle refused the Court's offer stating: "I believe they've been adequately instructed on that point[.]" Id. 470:14-15.

        The jury returned a verdict finding: Defendants are not jointly and severally liable for Hazle's emotional distress damages; "the amount of emotional distress damages caused by [each] Defendant" is zero; Defendants are not jointly and severally liable for Hazle's loss of time and freedom of movement damages; "the amount of loss of time and freedom of movement damages caused by [each] Defendant" is zero; and, Hazle is not entitled to punitive damages. (ECF No. 158.) After the verdict was read in open court in the presence of the parties and the jury, the judge asked counsel: "Any further action to take with respect to the jury?" (RT 488:2.) To which both parties responded "[n]o". Id. 488:3-4.

        Hazle now argues that the jury's zero damages award was contrary to law and disregarded the Court's instructions. Specifically, Hazle argues it is well-established law that when there is an adjudication of a constitutional violation that resulted in a loss of liberty, plaintiff is entitled to compensatory damages that exceed mere nominal damages. (Mot. 6:21-23.) Hazle also argues the jury disregarded the Court's instructions in failing to award at least nominal emotional

distress damages. Id. 8:17-18. Defendants counter Hazle waived his
arguments regarding the zero damages award when he failed to challenge
the zero damages verdict after the jury's verdict was read and before
the jury was discharged. (Defs.' Opp'n to Mot. for New Trial ("Opp'n")
9:11-14.)

> [M]otions for a new trial challenging a zero damages
> award as inconsistent with liability are waived when
> either: (1) a jury verdict finds liability but no damages
> and the moving party does not object before jury
> discharge; or, more generally, (2) the moving party
> argues that the jury has rendered a verdict that contains
> two legal conclusions that are inconsistent with one
> another, and the moving party does not object before jury
> discharge.

Kode v. Carlson, 596 F.3d 608, 611 (9th Cir. 2010). "This rule
recognizes that district court judges are in a unique position to
instruct the jury regarding the meaning of the law, including whether
two legal conclusions by the jury are inconsistent." Id. Here, Hazle's
"motion[] for a new trial challenging [the] zero damages award as
inconsistent with [the Court's finding of] liability [is] waived . . .
[since Hazle did] not object before jury discharge[.]" Id.

Further, the jury's award of zero damages is consistent with
its causation findings in the jury verdict, and is not contrary to the
clear weight of the evidence. The jury "likely concluded" that no
defendant was a cause of any injury Hazle received or suffered as a
result of his Establishment Clause claim. Guy, 608 F.3d at 588. "[I]t
has long been held that a jury may properly refuse to credit even
uncontradicted testimony." Id. Here, it is evident that the jury did not
find any defendant was a cause of any of Hazle's injuries. Further, it
is undisputed that the Board of Prison Hearings ordered Hazle to
participate in the Empire program. Hazle himself testified he was "still
in custody" when he was sent to the Empire program. (RT 322:3.) Since

Hazle "has not shown that the jury's verdict was clearly not supported by the evidence or only based on speculation or guesswork[,]" his motion for a new trial based on his arguments that the jury's verdict was contrary to the clear weight of the evidence and that the jury failed to award damages which was contrary to law and evinces that the jury did not follow the Court's instructions is denied. <u>Id.</u>

### B. False Testimony/Newly Discovered Evidence

Hazle also argues a new trial is warranted because the Defendants presented false testimony that their only option under the circumstances was to return him to prison, and this testimony tainted the trial proceedings. (Mot. 11:1-2.) Defendants rejoin that Hazle's "argument that such testimony was false is wholly specious and is contradicted by what Plaintiff learned in depositions of the Defendants . . . months before trial." (Opp'n 12:17-18.)

A new trial may be granted if the verdict "is based upon false or perjurious evidence[.]" <u>Molski</u>, 481 F.3d at 729. Hazel has not presented evidence suggesting that any Defendant's testimony was false or perjurious.

Hazle also argues that "[e]ven a cursory review of the governing regulations [in the CDCR Operations Manual] demonstrates that Crofoot and Wilding . . . could have made recommendations to the board to remove or adjust the conditions of Hazel's parole[;] [and,] [h]ad the truth been revealed at trial, it would likely have led to a different verdict." (Mot. 11:15-18.) Defendants counter that this Hazle's his argument is tantamount to an objection to their lack-of-authority defense, which Hazel waived since his questions during his cross examination invited this testimony and he did not object to this evidence. (Opp'n 8:26, 9:1-9, 11:24-12:8.) Hazle responds that he is not

arguing that the Court improperly admitted the lack-of-authority evidence. (Reply 2:6-8.) Hazle argues:

> Notwithstanding defendants' testimony to the contrary, CDCR's Operations Manual provides that a parole agent and his supervisor have a variety of options when a civil addict parolee such as Hazle is deemed to be in violation of the terms of his parole. Specifically, a parole agent is required under these circumstances to prepare a report to the [Narcotic Addict Evaluation Authority ("NAEA")] in which he must make one of several recommendations, at least three of which do not involve returning the parolee to prison. He may, for example, recommend that the NAEA "add, delete or modify any special condition of civil addict parole," that the parolee "continue on parole" (a recommendation which may be made when the "civil addict parolee has violated conditions of parole or when a violation is minor"), or that parole be suspended and reinstated (a recommendation which "may be made when a violation has occurred, but civil addict parolee's best interests would be better served by retention in community"). See Article 14 – Civil Addict Violations, §§ 82050.1, and 82050.7. Even in the absence of a violation of a condition of parole, a parole agent may recommend that NAEA "add or remove special conditions of release or civil addict parole." Article 11 – Conditions of Release, Parole and NAEA Appeals, §82020.2.1.

(Mot. 4:2-15.)

Although Hazle indicates the CDCR's Operations Manual, which he contends reveals Defendants had options other than returning him to prison after he was removed from the Empire program, is newly discovered evidence that warrants a new trial, he has not addressed the standard applicable to determining whether this evidence is newly discovered evidence that justifies granting his motion for a new trial. To prevail on his motion for a new trial under Rule 59 based on newly discovered evidence Hazle has the burden of establishing: "(1) the evidence was discovered after trial, (2) the exercise of due diligence would not have resulted in the evidence being discovered at an earlier stage and (3) the newly discovered evidence is of such magnitude that production of it earlier would likely have changed the outcome of the case." Far Out Productions, Inc. v. Oskar, 247 F.3d 986, 992-93 (9th Cir. 2001).

1    Hazle "fails to [address or] meet any of these three
2    criteria." <u>Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.</u>, 833 F.2d
3    208, 212 (9th Cir. 1987). On the first point, Hazle indicates he had
4    possession of this evidence prior to trial as follows: "Since defendants
5    had never raised this 'lack of authority' defense as an affirmative
6    defense or in the pretrial statement, trial brief, or other submissions
7    that called for disclosures of such defense, plaintiff had neither
8    anticipated the need for such evidence nor included these Operations
9    Manual provisions in his pretrial exhibit list." (Mot. 4:23-26.)
10   "Evidence is not 'newly discovered' under the Federal Rules if it was in
11   the moving party's possession at the time of trial or could have been
12   discovered with reasonable diligence." <u>Coastal Transfer Co.</u>, 833 F.2d at
13   212.

14   Hazle's argument indicates he did not realize before trial
15   that the Operations Manual could be probative of each Defendant's state
16   of mind at the time each Defendant made a decision relevant to Hazel's
17   punitive damages claims. The punitive damages jury instruction indicated
18   this evidence could have probative value since it stated in part: "An
19   act or omission is oppressive if the defendant injures or damages or
20   otherwise violates the rights of Plaintiff with unnecessary harshness or
21   severity, such as by the misuse or abuse of authority or power or by the
22   taking advantage of some weakness or disability or misfortune of
23   Plaintiff." (RT 423:1-6.) This provision of the punitive damages jury
24   instruction is almost identical to a provision in Hazle's proposed jury
25   instruction number eight, which also used the language "misuse or abuse
26   of authority or power". (ECF No. 118 16:16-19.) Since "misuse or abuse
27   of authority or power" was a trial issue, it should have been apparent
28   to Hazle that the trial could include evidence on what each Defendant

understood to be his or her authority. The pretrial order states that "[t]rial on the damage issues shall be to a jury[,]" and the parties understood that damage issues included punitive damages. See U.S. v. First Nat. Bank of Circle, 652 F.2d 882, 886 (9th Cir. 1981) (indicating that "a pretrial order should . . . be liberally construed to permit evidence and theories at trial that can fairly be said to be embraced within its language").

Hazle does not adequately explain why he could not have obtained the referenced Operations Manual provisions before the trial was over. Even if each Defendant's lack-of-authority testimony at trial surprised Hazle, it is unclear why Hazle did not obtain the referenced Operations Manual provisions before the trial ended. Hazle has not shown that his decision, resulting in his failure to use this evidence during the trial, constitutes the measure of diligence required under the newly discovered evidence criteria. Therefore, the Court need not reach the question of whether this evidence would have changed the outcome of the case.

Accordingly, Hazle has not shown that a Defendant perjured him or herself, or that he is entitled to a new trial based on newly discovered evidence.

## IV. CONCLUSION

For the stated reasons, Hazle's motion for a new trial is DENIED.

Dated:  January 12, 2011

GARLAND E. BURRELL, JR.
United States District Judge